## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LELIA PROCTOR,

        Plaintiff,

        v.

DISTRICT OF COLUMBIA, *et al.*

        Defendants.

Civil Action No. 13-00985

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, Leila Proctor, proceeding *pro se*, brings numerous federal and state law claims arising out of her termination from the District of Columbia Public Schools ("DCPS"). Pending before the Court is the District of Columbia's (the "District") Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 8 ("D.C.'s Mot. Dismiss") and Attorney General Eric Holder and U.S. Attorney Ronald Machen's ("Federal Defendants") Motion to Dismiss Federal Defendants, ECF No. 20.[1]  For the reasons stated below, the District's motion for summary judgment and the Federal Defendants' motion to dismiss are granted.

## I.  BACKGROUND

Since 1977, the plaintiff served as a science teacher for DCPS.  Am. Compl. at 3, ECF No. 3.  Her service came to an abrupt end when she received a Reduction in Force ("RIF")

---

[1] On September 29, 2014, the Court issued an Order granting the District's Motion to Dismiss or, in the Alternative, for Summary Judgment.  *See* Order (Sep. 29, 2014), ECF No. 25.  The Order notes that this Memorandum Opinion would follow in order to permit the Court to address both the District's arguments and the Federal Defendants' arguments in a single opinion.  Following issuance of the Order dismissing the plaintiff's claims with respect to the District, the plaintiff filed a motion requesting discovery, *see* Memorandum Requesting Discovery, ECF No. 28, and a motion seeking to amend the complaint, *see* Memorandum Requesting Time to Amend My Complaint, ECF No. 29.  In light of the Court's Order on September 29, 2014, the Court denies these motions as moot with respect to the District.  Moreover, because no amendment or discovery could save the plaintiff's claims with respect to the Federal Defendants, such motions are also denied.

notice, effective November 2, 2009.  *See* Am. Comp. ¶ 32.  The plaintiff alleges that she received

the RIF notice as a result of "blatant deliberate direct discrimination."  Am. Compl. ¶ 29.

Between June and August 2009, DCPS hired approximately 934 new teachers, primarily

from organizations such as Teach for America and the New Teacher Project.  Am. Compl. ¶ 32.

In August 2009, the plaintiff received a letter from DCPS instructing her to report to Woodson

Senior High 9th Grade Academy for the 2009 to 2010 school year.  Am. Compl. ¶ 30.  Upon

arrival, the plaintiff noticed that Woodson Senior High had retained three new science teachers

during the summer, two of whom were white women in their twenties and members of Teach for

America.  Am. Compl. ¶31.  On October 2, 2009, the plaintiff received an official notice that,

due to a DCPS budget shortfall, her position was being eliminated pursuant to a RIF.  Pl. Mem.

Opp'n at 10, ECF No. 16.  The plaintiff was one of approximately 266 teachers subject to the

RIF.  Am. Compl. ¶ 32.

On October 7, 2009, the plaintiff's union, the Washington Teachers' Union ("the

Union"), challenged the RIF in District of Columbia Superior Court.  *See Washington Teachers'*

*Union Local #6 v. Rhee et al.*, No. 2009 CA 007482B (October 9, 2009) ( "WTU Litigation");

s*ee also* Defs.' Mem. Supp. Mot. Dismiss and Summ. J. ("D.C.'s Mem."), Ex. 2, Am. Compl.,

WTU Litigation ("WTU Amended Complaint"), ECF No. 8-2.  As part of their challenge, the

Union alleged that the supposed "budget shortfall" was "clearly a pretext[]" so that DCPS could

discharge "the older, more senior teachers" without the need to follow the bargained-for

discharge procedures.  *See* WTU Amended Complaint at 2–3.[2]  On November 5, 2009, the court

heard testimony from five witnesses on behalf of the Union and two witnesses on behalf of the

defendant, the District of Columbia.  D.C.'s Mem. Ex. 7, Order Den. Pl.'s Mot. Prelim. Inj. and

---

[2] In parallel, the plaintiff filed a petition for appeal with the Office of Employee Appeals concerning her pending
termination.  She was represented in the petition by the Union.  *See* D.C.'s Mem., Ex. 1.

Mot. TRO, WTU Litigation at 5 ("WTU Preliminary Injunction Ruling"), ECF No. 8-7.  On

November 24, 2009, the court denied the Union's request for a preliminary injunction

concluding that "some questionable RIF decisions do not establish that the RIF was a pretext for

a mass discharge, given the undisputed evidence that the DCPS budget was sufficient to support

the existing staff and the new teachers being hired for the current school year, until the Council

reduced the budget . . . ."  *Id.* at 17.  Three years later, on September 7, 2012, the Superior Court

adopted the findings and analysis from the preliminary injunction and dismissed the case.  *See*

D.C.'s Mem., Ex. 3, Order Granting Mot. Dismiss, WTU Litigation ("WTU Motion to Dismiss

Ruling"), ECF No. 8-3.  The court again determined that "the RIF . . . was indeed a RIF," *id.* at

4, and concluded that "the facts in no way support" the Union's theory "that DCPS had created

the shortfall by hiring too many new teachers in the spring and early summer of 2009 . . . as a

pretext for terminating more senior teachers . . . ."  *Id.* at 4 n.3.

Shortly after the Superior Court had denied the Union's request for a preliminary

injunction, the plaintiff challenged, on December 5, 2009, her dismissal by filing a complaint

with the EEOC.  *See* D.C.'s Mem., Ex. 5 ("December 5, 2009 EEOC Charge"), ECF No. 8-5.

Plaintiff checked two boxes marked "Age" and "Retaliation," claiming that she "was

discriminated against based upon [her] age 69 and retaliated against in violation of the Age

Discrimination in Employment Act of 1967."  *Id.*  Almost two years later, on October 21, 2011,

the plaintiff filed an addendum to the December 5, 2009 EEOC Charge, requesting that "the

charge of violation of my Civil Rights [be] added to [the] initial charge of discrimination (age

and race)."  *See* Pl.'s Mem. Opp'n Mot. Dismiss, Ex. 2 at 2 ("October 21, 2011 EEOC

Addendum"), ECF No. 16-1.  Despite the wording of the addendum, the original EEOC Charge

contained no mention of race discrimination.  *See* December 5, 2009 EEOC Charge.  Nearly

three years after the original charge, and one year after the addendum, on November 15, 2012, the plaintiff filed an additional EEOC charge, this time checking three boxes for age, retaliation, and race.  *See* D.C.'s Mem., Ex. 6 ("November 15, 2012 EEOC Charge"), ECF No. 8-6.  In this charge, the plaintiff alleged that she "[had] been discriminated against based on [her] race (Black)."  *Id.*

During the WTU Litigation and its aftermath, the media published numerous stories regarding the RIF.  In one story, appearing in the February 2010 issue of Fast Company, then-DCPS Chancellor Michelle Rhee explained her justification for the RIF:  "I got rid of teachers who had hit children, who had had sex with children, who had missed 78 days of school.  Why wouldn't we take those things into consideration?"  *See* Pl.'s Mem. Reply Supp. Opp'n Def.'s Mot. Dismiss at 12 ("Pl.'s Reply"), ECF No. 19.  Several other news sources picked-up and reported the quotes, both around the time of initial publication and in the years since.  *See id.* at 13–15.

On June 28, 2013, the plaintiff filed the instant action against two D.C. and two federal government officials, DCPS, and the District asserting violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"); race and age discrimination in violation of Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d *et seq.* ("Title VI"); race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII"); a claim under 42 U.S.C. § 1983 for violations of Due Process; race and age discrimination in violation of the D.C. Human Rights Act, D.C. Code § 2-14-1 *et seq.* ("DCHRA"); wrongful discharge; defamation; and fraudulent misrepresentation.[3]  *See* Am. Compl. at 1–2, 24.

---

[3] The plaintiff's complaint charges the following defendants:  (1) Kaya Henderson, Chancellor, DCPS, (2) Michelle Rhee, former Chancellor, DCPS, (3) DCPS, (4) the District of Columbia, (5) Ronald Machen, "the U.S. Attorney

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction under Federal Rule of Civil Procedure 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)).  Absent subject matter jurisdiction over a case, the court must dismiss it.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006); FED. R. CIV. P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (quoting *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004))).  The court

---

General for the District of Columbia," and (6) Eric Holder, the U.S. Attorney General.  In this circumstance, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) ("When sued in their official capacities, government officials are not personally liable for damages.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *Jefferies v. District of Columbia*, 917 F.Supp.2d 10, 29 (D.D.C. 2013) ("A suit against a District of Columbia official in her official capacity is equivalent to a suit against the municipality itself.") (citations and  internal quotation marks omitted); *Kranz v. Gray*, 842 F.Supp.2d 13, 16 n.1 (D.D.C. 2012).  The Court, therefore, will substitute the District of Columbia as the defendant in place of defendants 1–3, listed above.  *See Kranz*, 842 F.Supp.2d at 16 n.1; *Waker v. Brown*, 754 F.Supp.2d 62, 65 (D.D.C. 2010) (substituting the District of Columbia for the mayor, police chief, and Department of Corrections); *Henneghan v. D.C. Pub. Schs.*, 597 F.Supp.2d 34, 37 (D.D.C. 2009) (substituting the District of Columbia for DCPS).

need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions.  *See Browning v. Clinton*, 292 F.3d 235,  242 (D.C. Cir. 2002).  Moreover, in evaluating subject matter jurisdiction, the court, when necessary, may "'undertake an independent investigation to assure itself of its own subject matter jurisdiction,'" *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1107–08 (D.C. Cir. 2005) (quoting *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987)), and consider facts developed in the record beyond the complaint, *id. See also Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992) (in disposing of motion to dismiss for lack of subject matter jurisdiction, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."); *Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).  The burden of establishing any jurisdictional facts to support the exercise of the subject matter jurisdiction rests on the plaintiff. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010); *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).

   **B.     Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6)**

   Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses in original; internal quotations and citations omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 319 (2007).  The Supreme Court has cautioned that although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, []

it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Iqbal*, 556 U.S. at 678).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.* at 678 (citing *Twombly*, 550 U.S. at 556); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief," *Twombly*, 550 U.S. at 555 (alteration in original), and "nudge[ ] [the] claims across the line from conceivable to plausible," *id.* at 570.  Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact.  *Twombly* at 555; *Sissel v. United States HHS*, 2014 U.S. App. LEXIS 14397 (D.C. Cir. 2014) (in considering Rule 12(b)(6) motion, the "court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct") (internal quotations and citations omitted).  In addition, courts may "ordinarily examine" other sources "when ruling on Rule 12(b)(6) motions

to dismiss, in particular, documents incorporated the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc.*, 551 U.S. 322 (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)); *see also English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013).

### C.    Conversion to Motion for Summary Judgment

The District has moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal, or, alternatively, for summary judgment, pursuant to Federal Rule of Civil Procedure 56 on all of the plaintiff's claims. *See* D.C.'s Mot. Dismiss. Federal Rules of Civil Procedure 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment," and if a motion is so converted, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." [4] Fed. R. Civ. P. 12(d).

The Circuit reviews a district court's decision to convert a motion to dismiss into a summary judgment motion for an abuse of discretion. *Colbert v. Potter*, 471 F.3d 158, 164–65 (D.C. Cir. 2006); *Flynn v. Tiede–Zoeller, Inc.*, 412 F. Supp. 2d 46, 50 (D.D.C. 2006) ("The decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court."). In using this discretion, "the reviewing court must

---

[4] In the instant action, because the plaintiff is proceeding *pro se*, she was provided with an order on December 11, 2013, outlining the requirements for responding both to a motion under Federal Rule of Civil Procedure 12(b)(6) and under Federal Rule of Civil Procedure 56. *See* Dec. 11, 2013 Order, ECF No. 9; s*ee also Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) (holding that a *pro se* party must be advised of consequences of failing to respond to a dispositive motion, including "an explanation that the failure to respond . . . may result in the district court granting the motion and dismissing the case"); *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992) (holding that a *pro se* party must be advised, when motion to dismiss may be converted to motion for summary judgment, that "'any factual assertion in the movant's affidavits will be accepted by the district judge as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion'" (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982))). This order, commonly referred to as a *Fox/Neal* Order, both alerted the plaintiff of the need to respond to the District's motion and of the need to provide supporting factual information. After four requests for an extension of time, the plaintiff filed her opposition to the District's motion to dismiss on June 12, 2014, or approximately seven months after receiving notice of the need to respond and of the need to provide supporting factual information.

assure itself that summary judgment treatment would be fair to both parties." *Tele-Commc'ns of Key W., Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985). Therefore, "[i]n converting the motion, district courts must provide the parties with notice and an opportunity to present evidence in support of their respective positions." *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011). When the defendant expressly moves for summary judgment in the alternative to a motion to dismiss before discovery has been conducted, and relies upon extra-pleading material, to which the plaintiff has an opportunity to respond, the Court need not issue separate prior notice of the conversion. *See Colbert*, 471 F.3d at 168; *see also Mount v. Johnson*, No. 12-cv-1276, 2014 U.S. Dist. LEXIS 49613, at *20 (D.D.C. Apr. 10, 2014); *Pintro v. Wheeler*, No. 13-cv-0231, 2014 U.S. Dist. LEXIS 45092, at *13 n.5 (D.D.C. Apr. 2, 2014) (finding prior notice of conversion unnecessary "where the plaintiff is represented by counsel and has responded to the submission of exhibits with evidence of her own."); *Hamilton v. Geithner*, 743 F. Supp. 2d 1, 8 (D.D.C. 2010) (Walton, J.), *aff'd*, 666 F.3d 1344 (D.C. Cir. 2012).

If extra-pleading evidence "is comprehensive and will enable a rational determination of a summary judgment motion," a district court will be more likely to convert to summary judgment, but "when it is scanty, incomplete, or inconclusive," the district court is more likely to decline to convert to summary judgment and permit further discovery. *See* 5C Charles Alan Wright, et al., Federal Practice & Procedure § 1366 (3d ed. 2012). Thus, there is no bright-line threshold for conversion under Rule 12(d); the touchstone is fairness and whether consideration of summary judgment is appropriate, in light of the nature of the extra-pleading material submitted, the parties' access to sources of proof, the parties' concomitant opportunity to present evidence in support or opposition to summary judgment and the non-moving party's need, as reflected in a sufficiently particularized request, under Federal Rule of Civil Procedure 56(d), for

discovery in order to respond adequately.  In light of the extra-pleading evidence that has been

submitted, and the ample time afforded the parties to access sources of proof, the Court will

consider matters beyond the pleadings and treat the District's motion as one for summary

judgment.[5]

### D.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Summary judgment is properly

granted against a party who, "after adequate time for discovery and upon motion, . . . fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011) (same).  The burden is on

the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in

dispute.  *Celotex*, 477 U.S. at 323; *Hendricks v. Geithner*, 568 F.3d 1008, 1012 (D.C. Cir. 2009).

"Material facts are those that might affect the outcome of the suit under governing law; genuine

issues are those in which the evidence before the court is such that a reasonable trier of fact could

find for the moving party."  *Hendricks*, 568 F.3d at 1012; *see also Holcomb v. Powell*, 433 F.3d

880, 895 (D.C. Cir. 2006) ("A fact is 'material' if a dispute over it might affect the outcome of a

suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the

---

[5] In any event, even if the Court did not treat the motion as a motion for summary judgment, the extra-pleading materials submitted by the parties would still be considered since these materials consist primarily of documents over which the Court may take judicial notice because they are publically filed as part of court proceedings or are published reports in the media.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice.").  As discussed below, the defendants bear the burden of proof in regards to several of the defenses asserted in this matter (*e.g.*, failure to exhaust administrative remedies) and have therefore submitted materials outside of the pleadings in support of their defense, including materials filed by the plaintiff with the EEOC.  The defenses at issue consist of pure conclusions of law and require no judicial fact-finding.

summary judgment determination." (citing *Anderson v. Liberty Lobby, Inc.* (*Liberty Lobby*), 477 U.S. 242, 248 (1986))).

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in favor of the nonmoving party and shall accept the nonmoving party's evidence as true. *Liberty Lobby*, 477 U.S. at 255; *see also Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 23–24 (D.C. Cir. 2013). The Court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider "other materials in the record." FED. R. CIV. P. 56(c)(3). The nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [its] position," *Liberty Lobby*, 477 U.S. at 252, and cannot rely on mere allegations or conclusory statements, *see Ass'n of Flight Attendants v. Dep't of Transp.*, 564 F.3d 462, 465 (D.C. Cir. 2009); *Hussain v. Nicholson*, 435 F.3d 359, 365 (D.C. Cir. 2006); *Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006) (Rogers, J., concurring); *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *accord* FED. R. CIV. P. 56(e). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See, e.g.*, FED. R. CIV. P. 56(c)(1); *Equal Rights Ctr. v. Post Props.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011) (noting that at summary judgment stage, plaintiff "can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment motion will be taken to be true.'" (quoting *Sierra Club v. EPA*, 292 F.3d 895, 898–99 (D.C. Cir. 2002) (ellipsis and second alteration in original))). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

# III.    DISCUSSION

Pending before the Court is the District's motion for summary judgment and the Federal

Defendants' motion to dismiss.  The Court will first address the District's motion before turning

to the Federal Defendants' motion.

## A.    District of Columbia's Motion for Summary Judgment

The District argues that the plaintiff's claims fail as a result of: (1) the doctrine of issue

preclusion;[6] (2) the plaintiff's failure to exhaust her administrative remedies; and (3) the

applicable statute of limitations.[7]  Each of these arguments is addressed *seriatim* below.

### 1.    *Issue Preclusion*

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion,

which are collectively referred to as 'res judicata.'"  *Taylor v. Sturgell,* 553 U.S. 880, 892

(2008).  Claim preclusion "forecloses 'successive litigation of the very same claim, whether or

not relitigation of the claim raises the same issues as the earlier suit.'"  *Id.* (quoting *New

Hampshire v. Maine,* 532 U.S. 742, 748 (2001)).  In contrast, issue preclusion, which was "once

known as 'collateral estoppel' and 'direct estoppel,'" bars "successive litigation of an issue of

fact or law actually litigated and resolved in a valid court determination essential to the prior

---

[6] Additionally, the District notes, in a footnote, that the WTU Litigation is currently on appeal before the D.C. Court
of Appeals, and suggests that the suit could be dismissed "pursuant to the theory of parallel litigation."  D.C.'s Mem.
at 12 n.2 (citing *Holland v. ACL Transp. Serv., LLC*, 815 F. Supp.2d 46, 55 (D.D.C. 2011) ("District courts have the
discretion to . . . dismiss a pending suit when parallel litigation that is factually related is ongoing in another
forum.").  Nevertheless, "the federal rule and the rule in this circuit is that collateral estoppel may be applied to a
trial court finding even while the judgment is pending on appeal."  *S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 740
F.2d 1011, 1018 (D.C. Cir. 1984).  Accordingly, the Court declines the District's invitation to dismiss the suit on
those grounds.

[7] In a footnote, the District asserts that, to the extent the plaintiff has alleged a claim of age discrimination in
violation of Title VII, the claim should be dismissed.  The District argues that the ADEA is the "exclusive federal
remedy for age discrimination."  *See* D.C.'s Mem. at 6 n.1.  The Court agrees.  In this Circuit, "the ADEA provides
the exclusive remedy for a federal employee who claims age discrimination."  *See Chennareddy v. Bowsher*, 935
F.2d 315, 318 (D.C. Cir. 1991); *see also Ward v. Kennard*, 133 F. Supp. 2d 54, 58 (D.D.C. 2000) (dismissing claims
"because the plaintiff fails to assert these age-discrimination claims under the ADEA").  To the extent the plaintiff
has alleged an age discrimination claim as a violation of Title VII, this claim is dismissed.

judgment, even if the issue recurs in the context of a different claim." *Id.* at 892 & n.5 (internal

citations and quotation marks omitted); *see also U.S. Postal Serv. v. Am. Postal Workers Union,*

553 F.3d 686, 696 (D.C. Cir. 2009) ("Under collateral estoppel, once a court has decided an issue

of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a

suit on a different cause of action involving a party to the first case.") (internal citation and

quotation marks omitted).  "The objective of the doctrine of issue preclusion . . . is judicial

finality; it fulfills 'the purpose for which civil courts had been established, the conclusive

resolution of disputes within their jurisdiction.'" *Yamaha Corp. of Am. v. United States*, 961

F.2d 245, 254 (D.C. Cir. 1992) (quoting *Kremer v. Chemical Constr. Corp.* 456 U.S. 461, 467

n.6 (1982)).

Three elements must be satisfied for a final judgment to preclude litigation of an issue in

a subsequent case:  "[1], the same issue now being raised must have been contested by the parties

and submitted for judicial determination in the prior case[; 2] the issue must have been actually

and necessarily determined by a court of competent jurisdiction in that prior case[; and] [3]

preclusion in the second case must not work a basic unfairness to the party bound by the first

determination." *Martin v. Dep't of Justice,* 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha,*

961 F.2d at 254 (D.C. Cir. 1992)) (alterations in original).  Each of these requirements is met in

the instant case and is addressed below.

a)      *Contesting the Same Issue*

For purposes of issue preclusion, "once an *issue* is raised and determined, it is the entire

*issue* that is precluded, not just the particular arguments raised in support of it in the first place."

*Yamaha*, 961 F.2d at 254 (emphasis in original).  Moreover, "[p]reclusion cannot be avoided

simply by offering evidence in the second proceeding that could have been admitted, but was

not, in the first." *Id.* at 254–55.  The District argues that both the WTU Litigation and the instant

litigation directly confront the issue of whether "the RIF was . . . a pretext to get rid of older teachers and replace them with younger teachers." D.C.'s Mem. at 8. The plaintiff disagrees, and argues that "there was absolutely no litigation on age discrimination" in the WTU litigation and that the "WTU's case was about the [Collective Bargaining Agreement]." *See* Pl.'s Mem. Opp'n at 21. An analysis of the complaint filed in the WTU litigation, the amended complaint filed in the current action, and the opinions of the D.C. Superior Court reveal the plaintiff's argument to be without merit.

In the WTU Litigation, the Union alleged that in light of the 934 teachers hired in the spring and summer of 2009, the "DCPS' attempt to disguise this mass discharge [of 266 teachers] as a 'RIF' caused by a 'budget shortfall' [was] clearly a pretext[.]" WTU Am. Compl. at 2. Here, the plaintiff has alleged that she was fired "under the pretext of a RIF," Am. Compl. ¶ 32, after Chancellor Rhee "decided to have a pretend shortage of money," Am. Compl. ¶ 34, which was evidenced by the hiring of 934 new teachers, *see* Compl. ¶ 32. The D.C. Superior Court rejected the argument that the RIF was a pretext in both its ruling on the preliminary injunction and its ruling on the motion to dismiss. *See* WTU Preliminary Injunction Ruling at 17 (concluding that the plaintiffs did "not establish that the RIF was a pretext for a mass discharge, given the undisputed evidence that the DCPS budget was sufficient to support the existing staff and the new teachers being hired for the current school year, until the Council reduced the budget . . . ."); WTU Motion to Dismiss Ruling at 4 & n.3 (concluding that "the RIF was indeed a RIF" and that "the facts in no way support" the Union's theory "that DCPS had created the shortfall by hiring too many new teachers in the spring and early summer of 2009 . . . as a pretext for terminating more senior teachers . . . .").

Despite the Superior Court's ruling, the plaintiff argues that the court did not consider the fact that she was allegedly paid by the U.S. Department of the Treasury rather than by the District and that, therefore, her employment could not have contributed to any DCPS budgetary shortage. *See* Am. Compl. ¶ 55; Pl.'s Mem. Opp'n. at 2, 10.[8]   Regardless of the accuracy of this allegation, the plaintiff's claim fails.   The plaintiff's allegation simply attempts to pour new wine into old wine skins.   Issue preclusion forbids precisely this type of argumentation.   *See Yamaha*, 961 F.2d at 254–55 ("Preclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first.").   In the WTU Litigation, the court afforded the parties ample opportunity to present evidence of pretext and, indeed, the Union solicited testimony from five separate witnesses, including testimony by a former special education teacher and a guidance counselor.   *See* WTU Preliminary Injunction Ruling at 5. Thus, the Union had the opportunity to present the evidence the plaintiff now alleges, but, for whatever strategic or other reason, the Union decided to put forth alternative evidence on the issue of pretext, and the court ruled against them.   This Court will not upset this judicial determination.   *See Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) ("[I]ssue preclusion aims to avert needless relitigation and disturbance of repose . . . .").

Accordingly, the Court finds that the same issue presented in the WTU litigation is now before the Court in the instant litigation—whether the RIF was a pretext to discharge senior teachers.

---

[8] The plaintiff has cited no credible evidence in support of this allegation.  Nevertheless, the Court notes that both the District and the Federal Government (through the Department of Treasury) share responsibility for the DCPS retirement system, *see* District of Columbia Retirement Protection Act of 1997, Public Law 105–33, § 11011, 111 Stat. 251; 31 C.F.R. § 29.301, and that the plaintiff may be referencing that a portion of her retirement income is paid for by the Federal Government.

b)    *Parties Requirement*

Issue preclusion may not be asserted against one who was not a party in the first case. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971) ("Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue.").  "The rules that identify the parties affected by issue preclusion . . . are often described as rules of 'privity' and 'mutuality.'" 18 Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 4416 (2d ed.).  "The term privity signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon the others, although those others were not party to the lawsuit." *Gill and Dufus Servs., Inc., v. A. M. Nural Islam*, 675 F.2d 404, 405 (D.C. Cir. 1982).  Union members are considered to be in privity with their union for purposes of res judicata.  *See Adams v. Pension Ben. Guar. Corp.*, 332 F. Supp. 2d 231, 239 n.8 (D.D.C. 2004) ("Courts have recognized that unions are in privity with their membership for the purposes of res judicata."); *Heade v. Washington Metro. Area Transit Auth.*, No. 09-02460, 2010 WL 938462, at *2 n.2 (D.D.C. Mar. 12, 2010) ("Plaintiff's contention that the arbitration's findings do not bar her claim because she was not a party to that proceeding is also without merit. . . . [since] she was in privity with her union."); s*ee also Hitchens v. County of Montgomery*, 98 F. App'x 106, 114 (3d Cir. 2004) ("[C]ourts have held union members to be in privity with the union and have held that a decision against a union can bind union members in a subsequent action." (citing *Handley v. Phillips,* 715 F. Supp. 657, 666–67 (M.D. Pa. 1989); *Stokes v. Bd. of Tr. of Temple Univ.,* 683 F. Supp. 498, 502 (E.D. Pa. 1988)); *Monahan v. Dep't. of Corr.*, 214 F.3d 275, 285–86 (2d Cir. 2000) (recognizing that union members' "interests [are] adequately represented" by the union); *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1268 (5th Cir. 1990) ("Federal courts have long

recognized that individual members of labor unions . . . can be bound by judgments in suits brought by the union . . . .").

The plaintiff does not dispute that she was a member of the Union, and the record bears this out.  Indeed, the plaintiff was represented by Union counsel before the District of Columbia Office of Employee Appeals.  *See* D.C.'s Mem., Ex. 1.  Accordingly, the Court finds that the plaintiff was a party to the prior lawsuit.

> c)   *Actually and Necessarily Determined by a Court of Competent Jurisdiction Requirement*

For issue preclusion to apply, the issue must also have been "actually and necessarily determined" by a "court of competent jurisdiction."  *Martin v. Dep't of Justice,* 488 F.3d 446, 454 (D.C. Cir. 2007).  "A determination ranks as necessary or essential only when the final outcome hinges on it."  *Bobby v. Bies*, 556 U.S. 825, 835 (2009).  In the WTU Litigation, the plaintiffs argued that "the RIF was a subterfuge for an improper mass discharge, which would be arbitrable under the [Collective Bargaining Agreement]."  WTU Preliminary Injunction Ruling at 19.  Accordingly, it was necessary for the court to determine whether the RIF was a pretext— in which case the removal of the teachers was improper because it was not conducted pursuant to the Collective Bargaining Agreement—or whether the RIF resulted from budgetary concerns. The court's determination was explicit:  "[T]he Court finds that the plaintiff has shown virtually no likelihood of success on the merits of its claim that the RIF was not really a RIF and instead should be considered a mass discharge."  *Id.*  This finding was confirmed subsequently when the court dismissed the case.  *See* WTU Motion to Dismiss Ruling at 4 ("The Court therefore finds that based on the undisputed material facts in the record, the RIF was undertaken in the fall of 2009 in response to a budget shortfall, and it was indeed a RIF.").  The issue of whether the RIF was a pretext for a mass discharge of teachers was necessarily determined in the prior litigation,

and resolved in favor of DCPS.  Moreover, the D.C. Superior Court was competent to make this

determination.  *See Crabbe v. Nat'l Self Serv. Storage*, 955 F. Supp. 2d 1, 4 (D.D.C. 2013);

*Johnson v. Sullivan*, 748 F. Supp. 2d 1, 12 (D.D.C. 2010) ("Without question, the Superior Court

is a court of competent jurisdiction . . . .").  Accordingly, and consistent with the above, the

Court finds that the issue presented—whether the RIF was a pretext to discharge senior

teachers—was actually and necessarily determined by a court of competent jurisdiction in a prior

proceeding.

    d)    *No Basic Unfairness Requirement*

In examining "unfairness" for the purposes of issue preclusion, the D.C. Circuit has been

primarily concerned with whether  "the losing party clearly lacked any incentive to litigate the

point in the first trial, but the stakes of the second trial are of a vastly greater magnitude."

*Yamaha*, 961 F.2d at 254; *see also Venetian Casino Resort, L.L.C. v. N.L.R.B.*, 484 F.3d 601,

610 (D.C. Cir. 2007) ("We can discern no difference between the incentives that the Venetian

may have had in its Ninth Circuit litigation and its incentives here."); *Beverly Health & Rehab.*

*Servs., Inc. v. N.L.R.B.*, 317 F.3d 316, 323 (D.C. Cir. 2003) ("Beverly had every incentive to—

and did—litigate the issue before the Sixth Circuit so that there is no unfairness in holding

Beverly to the result reached there.").  If the other requirements of issue preclusion are met,

"courts should refuse to give the first judgment preclusive effect on grounds that the party lacked

adequate incentive to litigate in the first proceeding only upon a 'compelling showing of

unfairness.'"  *Otherson*, 711 F.2d at 277.

The Union had significant incentives to litigate the original action as the Union faced the

prospect of losing 266 teachers.  Moreover, the Union was able to bring significant resources to

bear in pursuit of their litigation.  *See Monahan*, 214 F.3d at 287-88 (finding that it would not be

unfair to collaterally estop union members because, in part, "an association suing to vindicate the

18

interests of its members can draw upon a pre-existing reservoir of expertise and capital. . . [and] often have specialized expertise and research resources relating to the subject matter of the lawsuit that individual plaintiffs lack." (quoting *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Brock,* 477 U.S. 274, 289 (1986))).  Accordingly, because of the significant stakes of the prior litigation, and the resources available to the Union, the Court determines that it would not be unfair to impose issue preclusion in this case.

e)      *Application of Issue Preclusion to the Instant Case*

As discussed above, all the requirements for issue preclusion are met in the instant action. The Court now turns to the impact of that determination on the instant case.  The District argues that "the doctrine of issue preclusion bars the Plaintiff from bringing any claim regarding age discrimination."  D.C.'s Mem. at 6.  This argument muddles the related but distinct doctrines of issue preclusion and claim preclusion.  While claim preclusion "foreclos[es] successive litigation *of the very same claim*," issue preclusion by contrast "refers to the effect of a prior judgment in foreclosing successive litigation *of an issue* . . . ."  *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) (emphasis added).  Therefore, issue preclusion cannot bar a subsequent claim. Nevertheless, issue preclusion may conclusively establish facts such that the plaintiff's claim must fail as a matter of law.  Such is the case here.

The plaintiff's ADEA and DCHRA claims both require proof that DCPS's stated justification for her removal was pretextual.  *See Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (holding that to determine whether "the employer intentionally discriminated against the employee" the court examines "if there is evidence from which a reasonable jury could find that the employer's stated reason for the firing is pretext . . . ."); *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011) ("We analyze discrimination claims under the D.C. Human Rights Act in the same way that we analyze discrimination claims

under the federal anti-discrimination laws. . . . Once an employer has offered a legitimate reason

for an employee's dismissal, the question at the summary judgment stage is whether the

employee has 'produced sufficient evidence for a reasonable jury to find that the employer's

asserted non-discriminatory reason was not the actual reason . . . .'" (internal citations omitted)).

The prior WTU Litigation already determined this precise issue:  "The Court therefore finds that

. . . the RIF was undertaken in the fall of 2009 in response to a budget shortfall, and it was indeed

a RIF."  WTU Motion to Dismiss Ruling at 4.  As a result, the plaintiff's claim of age

discrimination under the ADEA and the DCHRA must fail as a matter of law.  The District's

motion is granted and summary judgment shall be entered in favor of the District as it relates to

the plaintiff's age discrimination claims.

### 2.     *Administrative Exhaustion*

The District next argues that the plaintiff failed to exhaust her administrative remedies

with respect to her Title VII race discrimination claim and that, therefore, her claim must fail.

*See* D.C.'s Mem. at 12.  The Court agrees.

Under Title VII, a plaintiff must exhaust all administrative remedies. *See United Air

Lines, Inc. v. Evans,* 431 U.S. 553, 555 n.4 (1977); *McDonnell Douglas Corp. v. Green,* 411 U.S.

792, 798, (1973); *Washington v. Wash. Metro. Area Transit Auth.,* 160 F.3d 750, 752 (D.C. Cir.

1998) ("Before suing under . . . Title VII, an aggrieved party must exhaust his administrative

remedies . . . ."); *see also* 42 U.S.C. § 2000e–5(f)(1).  Title VII requires "aggrieved persons" to

file a charge with the EEOC within 180 days after the alleged unlawful employment practice

occurred, but this period is extended to 300 days when the person has initially instituted a

procedure with a state or local agency.  42 U.S.C. § 2000e–5(e)(1).  In the District of Columbia,

a plaintiff has 300 days to file a charge with the EEOC.  *See Carter v. George Washington Univ.*,

387 F.3d 872, 879 (D.C. Cir. 2004).

"A Title VII lawsuit following the EEOC charge is limited in scope to claims that are

'like or reasonably related to the allegations of the charge and growing out of such allegations.'"

*Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. Western and S. Life*

*Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994)).  This provides "the charged party notice of the claim

and 'narrow[s] the issues for prompt adjudication and decision.'"  *Park*, 71 F.3d at 907 (quoting

*Laffey v. Nw. Airlines, Inc.*, 567 F.2d 429, 472 n.325).  A plaintiff may amend an EEOC charge

"to cure technical defects or omissions" or to allege "additional acts which constitute unlawful

employment discrimination."  29 C.F.R. §1601.12(b).  Such amendments on the same subject

matter as the original charge will be deemed to "relate back to the date the charge was first

received," thereby permitting the amended allegations to potentially fall within the 300 day

requirement.  *Id.*  Courts in this district have not permitted suits to proceed, however, where a

plaintiff files a suit alleging a new substantive theory of discrimination that was not addressed in

the original EEOC charge or that was only addressed in an amendment that occurred outside the

300-day window.  *See, e.g.*, *Scott v. Dist. Hosp. Partners, L.P.*, No. 13-0600, 2014 WL 3702855,

at *4 (D.D.C. July 28, 2014) ("Because disability discrimination is a new substantive theory,

separate from her 2011 EEOC charge of age and race discrimination, it does not grow out of the

subject matter of the original charge."); *Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F.

Supp. 2d 59, 67 (D.D.C. 2008) ("[W]here administrative complaints for discrimination based on

sex, race and retaliation do not mention critical facts relevant to an age discrimination claim, the

later filed age claims do not relate back."); *Thrash v. Library of Cong.*, No. 04-0634, 2006 WL

463251, at *6 (D.D.C. Feb. 24, 2006) ("[T]he court determines that the defendant did not have

notice of the plaintiff's charges of age discrimination for a refusal to transfer the plaintiff based on her administrative charges of race and gender discrimination."); *Wilson v. Commc'ns Workers of Am.,* 767 F.Supp. 304, 306 (D.D.C. 1991) (holding that because the "amendment added a new substantive theory which is fundamentally distinct from the original race discrimination charge[,]" it "did not relate to, or grow out of [the plaintiff's] original EEOC charge").

For Title VII claims, the failure to properly exhaust administrative remedies is an affirmative defense and the defendant bears the burden of proof. *Bowden v. United States,* 106 F.3d 433, 437 (D.C. Cir. 1997); *Colbert v. Potter*, 471 F.3d 158, 165 (D.C. Cir. 2006); *Ellison v. Napolitano*, 901 F. Supp. 2d 118, 124 (D.D.C. 2012); *Dahlman v. Am. Ass'n of Retired Persons*, 791 F. Supp. 2d 68, 76 (D.D.C. 2011) (collecting cases). If the defendant meets this burden, then the burden shifts, and the plaintiff must "plead[] and prov[e] facts supporting equitable avoidance of the defense." *Bowden*, 106 F.3d at 437; *see also Terveer v. Billington*, No. 12-1290, 2014 WL 1280301, at *8 (D.D.C. Mar. 31, 2014). "[A]pplication of the doctrine of equitable tolling is solely within the Court's discretion." *Fortune v. Holder*, 767 F. Supp. 2d 116, 121 (citing *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998)). The Court will only exercise its equitable tolling power in a limited number of "extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988); *see also Smith v. Dalton*, 971 F. Supp. 1, 3 (D.D.C. 1997) ("The tolling power is to be exercised only in extraordinary circumstances . . . ."); *Strong–Fischer v. Peters*, 554 F. Supp. 2d 19, 24–25 (D.D.C. 2008). These instances include where "(1) 'a claimant has received inadequate notice,' (2) 'where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction,' (3) 'where the court has led the plaintiff to believe that she had done everything required of her,' or (4) 'where a motion for appointment of counsel is pending and

equity would justify tolling the statutory period until the motion is acted upon.'" *Bass v. Bair*, 514 F. Supp. 2d 96, 99 (D.D.C. 2007) (quoting *Mondy*, 845 F.2d at 1057).

As discussed above, on December 5, 2009, the plaintiff filed a charge with the EEOC alleging age discrimination and retaliation—but not race discrimination. *See* December 5, 2009 EEOC Charge. On October 21, 2011, 718 days after the plaintiff's termination, the plaintiff filed an "addendum" to her EEOC charge in which she requested that "law [42 U.S.C. § 1983] and the charge of violation of my Civil Rights [be] added to my initial charge of discrimination (age and race)." *See* October 21, 2011 EEOC Addendum. Despite the reference to "race" in the addendum, the plaintiff's initial EEOC charge did not contain an allegation of racial discrimination. *See* December 5, 2009 EEOC Charge. On November 15, 2012, 1109 days after the plaintiff's termination, the plaintiff filed an entirely new charge with the EEOC, in which she alleged race discrimination in addition to the original charges of age discrimination and retaliation. *See* November 15, 2012 EEOC Charge.

The District argues that the plaintiff is barred from litigating her Title VII race discrimination claim because she failed to file a charge of race discrimination with the EEOC within 300 days, as required. *See* D.C.'s Mem. at 12–15. The District is correct. The plaintiff's addendum was filed 718 days after the alleged discrimination, and plaintiff's full EEOC charge was filed 1109 days after the alleged discrimination. These are plainly outside the applicable time limits. Moreover, the plaintiff's subsequent filings cannot be said to "relate back" to the original EEOC charge, as they add an entirely new substantive theory. *See, e.g.*, *Marshall*, 536 F. Supp. 2d at 67 ("[W]here administrative complaints for discrimination based on sex, race and retaliation do not mention critical facts relevant to an age discrimination claim, the later filed age claims do not relate back."); *Wilson*, 767 F. Supp. at 306 (holding that because the "amendment

added a new substantive theory which is fundamentally distinct from the original race

discrimination charge[,]" it "did not relate to, or grow out of the [plaintiff's] original EEOC

charge").  The District has met its burden to prove a failure to exhaust, and so the plaintiff must

prove facts that support the equitable tolling of the defense.  *Bowden*, 106 F.3d at 437.  The

plaintiff has alleged no facts in the complaint, or briefing, to support a claim for equitable tolling

nor can the Court point to any facts in the record to justify the tolling of the exhaustion

requirement.

Accordingly, because the plaintiff failed to exhaust her administrative remedies, the

District's motion for summary judgment is granted as it relates to the plaintiff's claim for racial

discrimination in violation of Title VII.

### 3.    *Statute of Limitations*

The plaintiff's remaining claims asserted against the District consist of federal claims

under Section 1983 and for race discrimination, in violation of Title VI, as well as a host of state

law claims including Wrongful Discharge, Defamation, Fraudulent Misrepresentation, and race

discrimination in violation of the DCHRA.[9]  These claims are all barred by the applicable statute

of limitations.  The Court will first examine the plaintiff's federal law claims before addressing

the plaintiff's state law claims.

### a)    Federal Claims

"When a federal action contains no statute of limitations, courts will ordinarily look to

analogous provisions in state law as a source of a federal limitations period."  *Doe v. Dep't of

Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985).  Since Section 1983 does not have a built-in

statute of limitations, the general three-year statute of limitations imposed by District of

---

[9] The plaintiff's claim that DCPS's action constituted unlawful age discrimination in violation of the DCHRA was addressed in Section III.A.1.

Columbia law on claims for personal injury, *see* D.C. Code § 12-301(8), applies.  *See* 42 U.S.C.

§ 1983; *Savage v. District of Columbia*, No. 02-7135, 2003 WL 843326, at *1 (D.C. Cir. Feb. 25,

2003) ("The district court properly applied a three-year statute of limitations in this case brought

pursuant to 42 U.S.C. § 1983."); *Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998)

("[I]n states with multiple statutes of limitations, claims under section 1983 are governed by the

residual or general personal injury statute of limitations . . . ."); *see also Philogene v. District of*

*Columbia*, 864 F. Supp. 2d 127, 132 (D.D.C. 2012); *Lewis v. Bayh*, 577 F. Supp. 2d 47, 51–52

(D.D.C. 2008).  Likewise, courts apply a three-year statute of limitations for claims of

discrimination under Title VI.  *See, e.g.*, *Hajjar-Nejad v. George Washington Univ.*, 873 F. Supp.

2d 1, 15 (D.D.C. 2012) ("In this Circuit, the statute of limitations for Title VI claims is three

years."); *Mwabira-Simera v. Howard Univ.*, 692 F. Supp. 2d 65, 71 (D.D.C. 2010) ("[A]ll of the

federal discrimination claims asserted in the amended complaint are subject to dismissal if not

brought within three years of the accrual of the alleged injury."); *Richards v. Duke Univ.*, 480 F.

Supp. 2d 222, 237–38 (D.D.C. 2007) (noting that Title VI lacks its "own statute of limitations"

and that "courts have borrowed the statute of limitations from . . . § 1983, which in turn, rel[ies]

on the respective personal injury statute of limitations in a jurisdiction").  Accordingly, the Court

will apply a three year statute of limitations to both remaining federal claims.

The plaintiff's discrimination complaint arises from her termination, and termination is

"[a] discrete . . . discriminatory act [which] occurred on the day that it happened . . . ." *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002) (internal quotation marks omitted);

*see Coppinger–Martin v. Solis*, 627 F.3d 745, 749 (9th Cir. 2010) (concluding that the statute of

limitations began to run when the complainant learned of her actual injury, *i.e.*, the decision to

terminate her employment).  As such, at the absolute latest, "the plaintiff's claim accrued on the

date of [her] termination."[10]  *Fortune*, 767 F. Supp.2d at 121; *see also Gordon v. Office of the Architect of the Capitol*, 750 F. Supp. 2d 82, 92–93 (D.D.C. 2010) (concluding that the limitations period began to run on the date the complainant was informed that she had not been selected for a position).

The plaintiff was terminated on November 2, 2009, which started the three-year clock for purposes of the statute of limitations.  *See* Am. Compl. ¶ 32.  She filed the instant action on June 28, 2013, or nearly three years and eight months after her claim accrued, and nearly eight months after the statute of limitations expired.  Moreover, as discussed above, the plaintiff's plight presents none of the extraordinary and carefully circumscribed instances justifying the doctrine of equitable tolling.  Her claims, therefore, are barred by the applicable three-year statute of limitations and summary judgment is therefore granted in favor of the defendant as to the plaintiff's claims under Section 1983 and Title VI.[11]

b)    *State Law Claims*

The relevant statutes of limitation for the plaintiff's remaining state law claims—which include wrongful discharge, fraudulent misrepresentation, defamation, and violations of the DCHRA—also bar recovery.  The plaintiff's claims for wrongful discharge and fraudulent misrepresentation both lack specified statute of limitations and are therefore subject to the

---

[10] The plaintiff received notice of her pending termination on October 2, 2009.  *See* Pl. Mem. Opp'n at 10.  Since the plaintiff's claims are time-barred using either October 2, 2009 (the date of notice) or November 2, 2009 (the date of termination), and because the District argues for the later date, *see* D.C.'s Mem. at 17, the Court will use the November 2, 2009 date for purposes of the statute of limitations analysis.

[11] Additionally, the plaintiff's claims were not tolled during the pendency of the plaintiff's EEOC inquiry.  The Supreme Court has held that the statute of limitations continues to run on a claim that requires no administrative exhaustion even while the plaintiff pursues administrative remedies on a separate claim that requires exhaustion. *See Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 465–66 (1975) (holding that civil rights complainants with pending EEOC charges should file their Section 1981 claims in court and request a stay until the charges are resolved); *Carter v. District of Columbia,* 14 F. Supp. 2d 97, 102 (D.D.C. 1998) ("[B]ecause a Section 1981 claim is 'separate from and independent of' Title VII, the statute of limitations on a Section 1981 . . . claim is not tolled by the pendency of administrative action on a Title VII claim." (quoting *Johnson*, 421 U.S. at 466)); *Peart v. Latham & Watkins LLP*, 985 F. Supp. 2d 72, 85 (D.D.C. 2013) (same); *see also Adams v. District of Columbia,* 740 F. Supp. 2d 173, 182 (D.D.C.2010) ("A limitations period does not toll when a plaintiff is not required but chooses to exhaust his administrative remedies before pursuing a claim in court.").

general three-year limitations period proscribed in D.C. Code §12-301(8).  *See Kamen v. Int'l Brotherhood of Elec. Works*, 505 F. Supp. 2d 66, 78 (D.D.C. 2007) ("In the District of Columbia, the statute of limitations applicable to a claim of wrongful discharge in violation of public policy is the three-year 'catch-all' statute of limitations set forth in D.C. Code § 12–301(8)."); *Hallidorson v. Sandi Grp.*, 934 F. Supp. 2d 147, 154–55 (D.D.C. 2013) ("Under District of Columbia law, claims for fraud . . . are governed by a three-year statute of limitations.").  For the reasons discussed above with respect to the plaintiff's federal claims, the statutes of limitation bar the plaintiff's claims for wrongful discharge and fraudulent misrepresentation.

The plaintiff's claim of race discrimination in violation of the DCHR also falls outside the applicable statute of limitations.  A plaintiff has two-years from accrual to bring a claim under the DCHRA.  *See* D.C. Code § 2-1403.16(a).  "The timely filing of a complaint with the [D.C. Human Rights] Office . . . toll[s] the running of the statute of limitations while the complaint is pending."  *Id.*  So, too, does the timely filing of an EEOC Charge.[12]  In the instant case, the plaintiff filed a charge with the EEOC on December 5, 2009 for age discrimination. *See* December 5, 2009 EEOC Charge.  The plaintiff did not file a charge with the EEOC alleging race discrimination—which would have tolled the statute of limitations with respect to her

---

[12] Although the plaintiff filed a charge with the EEOC and not the D.C. Office of Human Rights, such filing still tolled the plaintiff's DCHRA claim.  *Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 886 (D.C. 2008) ("[A]ppellant's timely filing with the EEOC, of which [D.C. Office of Human Rights] promptly received a copy under the existing agreement between the federal and local agencies, sufficed to toll the limitations period for filing in court."); *see also Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1372 (D.C. Cir. 2008) (interpreting work-sharing agreement and finding that agreement designates the EEOC as the "agent for the purpose of receiving and drafting charges" for the D.C. Office of Human Rights, and vice versa, such that "for all intents and purpose, the [D.C. Office of Human Rights] receives charges filed with the EEOC"); *Brewer v. District of Columbia*, 891 F. Supp. 2d 126, 132 n. 5 (D.D.C. 2012) (finding state filing requirement satisfied because under the EEOC's "worksharing agreement" with the DCOHR, the EEOC sends complaints that it receives to the DCOHR); *Slate v. Pub. Defender Serv. for the Dist. of Columbia*, No. 13-00798, 2014 WL 1315238, at *16 (D.D.C. Apr. 2, 2014).

DCHR race discrimination claim—until November 15, 2012, or three years after her termination.[13]  The plaintiff's claim, therefore, is barred by the statute of limitations.

Finally, the plaintiff's defamation claim is subject to a one-year statute of limitations. *See* D.C. Code § 12-301(4); *Amobi v. District of Columbia*, 882 F. Supp.2d 78, 83 (D.D.C. 2012) ("[I]n the District of Columbia, there is a one-year statute of limitations for defamation claims . . . .").  "Defamation occurs on publication, and the statute of limitations runs from the date of publication."  *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882 (D.C. 1998); *see also Jin v. Ministry of State Security*, 254 F. Supp. 2d 61, 68 (D.D.C. 2003) (same). "Moreover, the District of Columbia follows the 'single publication' rule, whereby publication of defamatory matter 'gives rise to but one cause of action for libel, which accrues at the time of the original publication.'"  *Jin*, 254 F. Supp. 2d at 68 (quoting *Ogden v. Ass'n of the United States Army*, 177 F. Supp. 498, 502 (D.D.C.1959)).  The plaintiff alleges that former-Chancellor Rhee defamed her in comments made in the February 2010 edition of Fast Company.  *See* Pl.'s Reply at 8.  The plaintiff did not bring the instant action, however, until June 28, 2013, or over three years after the alleged defamatory statement.  Accordingly, the one-year statute of limitations bars her claim.

### B.       Federal Defendants' Motion to Dismiss

The plaintiff alleges identical claims against the Federal Defendants and these claims fail for the same reasons identified above.  The plaintiff's claims against the Federal Defendants also fail for several independent reasons discussed briefly below.

---

[13] As discussed earlier, *see* Section III.A.2, the plaintiff's October 21, 2011 EEOC Addendum did not "relate back" to the plaintiff's first EEOC Charge and thus will not serve to save her DCHRA claim.

1.     *ADEA, Title VII, and Wrongful Discharge Claims*

The plaintiff attempts to bring claims against the Federal Defendants for violations of the

ADEA and Title VII.  Yet, the ADEA and Title VII afford protection only for "employees in a

direct employment relationship with the employer and applicants for employment."  *Koch v.*

*Holder*, 930 F. Supp. 2d 14, 17 (D.D.C. 2013) (internal quotations omitted); *see also Spirides v.*

*Reinhardt,* 613 F.2d 826, 829 (D.C. Cir. 1979) (dismissing Title VII claim brought by non–

employee); *Delbert v. Duncan,* 923 F. Supp. 2d 256, 259 (D.D.C. 2013).  A plaintiff may bring a

discrimination claim against a non-employer defendant in limited situations where the defendant

"control[s] access to such employment and . . . den[ies] such access by reference to invidious

criteria." *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338, 1342 (D.C. Cir. 1973); *see also*

*Redd v. Summers,* 232 F.3d 933, 940–41 (D.C. Cir. 2000).  In the present case, the plaintiff was

employed by DCPS (not the Department of Justice and not the U.S. Attorney's Office) and her

employment does not meet any of the limited situations that permit liability against a non-

employer.  Her ADEA and Title VII claims therefore fail as a matter of law.

The plaintiff's claims against the Federal Defendants also fail because the defendant

failed to exhaust her administrative remedies as to the Federal Defendants.  Indeed, the Federal

Defendants were never identified in any of the plaintiff's EEOC Charges, which named only the

D.C. Public Schools as the plaintiff's employer.[14]  *See* December 5, 2009 EEOC Charge;

October 21, 2011 EEOC Addendum; November 15, 2012 EEOC Charge.  Accordingly, the

plaintiff failed to exhaust her administrative remedies with respect to the Federal Defendants and

her Title VII and ADEA claims fail on this independent basis.  *See Johnson v. Ashcroft*, No. 00-

cv-2743, 2001 WL 34366564, at *3 (D.D.C. June 21, 2001) (dismissing for failure to exhaust

---

[14] The October 21, 2011 EEOC Addendum also lists Mayor Vincent Gray.

administrative remedies where the plaintiff did "not name either of the federal defendants" in the plaintiff's EEOC complaint).

The plaintiff's Complaint also asserts a claim of wrongful discharge related to her termination. Yet, Title VII and the ADEA provide the exclusive remedy for federal employees alleging race and age discrimination. *See Brown v. General Services Administration*, 425 U.S. 820 (1976) (holding that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment."); *Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991) ("It is undisputed that the ADEA provides the exclusive remedy for a federal employee who claims age discrimination."). Accordingly, the plaintiff cannot bring her wrongful discharge claim against the Federal Defendants.

### 2. *Section 1983*

The plaintiff also seeks to bring a Section 1983 claim against the Federal Defendants. Under 42 U.S.C. § 1983, it is unlawful for a person acting under color of state law to deprive any other person of any federal constitutional or statutory right. "'The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Williams v. United States*, 396 F.3d 412, 414 (D.C. Cir. 2005) (quoting *West v. Atkins,* 487 U.S. 42, 49 (1988)). Although it is possible, in certain limited circumstances, for federal officials to operate under state law, *see Williams*, 396 F.3d at 414–15, the defendant has alleged no such facts in the present case. Indeed, the plaintiff has failed to allege that the Federal Defendants took any action whatsoever. The plaintiff's Section 1983 claim against the Federal Defendants fails for this additional reason.[15]

---

[15] Even were the Court to construe the plaintiff's claim as a *Bivens* action, the claim would still fail as the plaintiff has failed to identify in her complaint any actions taken by the Federal Defendants. *See Harris v. Holder*, 885 F.

### 3. *Defamation, Misrepresentation, and Violations of the DCHRA*

Sovereign immunity bars the plaintiff's claims against the Federal Defendants for defamation, fraudulent misrepresentation, and violations of the DCHRA and those claims are dismissed for lack of jurisdiction under Rule 12(b)(1). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Banks v. Office of Senate Sergeant-At-Arms and Doorkeeper of U.S. Senate*, 471 F.3d 1341, 1348 (D.C. Cir. 2006). "A waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *Fed. Aviation Admin. v. Cooper*, 132 S. Ct. 1441, 1448 (2012). For example, the Federal Tort Claims Act ("FTCA") expressly waives the United States' immunity from suit as to certain common law torts, but not as to all common law torts. *See* 28 U.S.C. §§ 1346(b)(1), 2679(b).

The FTCA bars suits against the United States with regards to claims of "libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). Therefore, courts in this Circuit regularly dismiss defamation and misrepresentation claims brought against the United States. *See, e.g.*, *Marcus v. Geithner*, 813 F. Supp. 2d 11, 16 (D.D.C. 2011); *Wilson v. Dep't of Transp.*, 759 F. Supp. 2d 55, 64 (D.D.C. 2011); *Upshaw v. United States*, 669 F. Supp. 2d 32, 44 (D.D.C. 2009); *see also Gardner v. United States*, 213 F.3d 735, 737 n.1 (D.C. Cir. 2000) ("Mr. Gardner's defamation claim against the United States is barred, because suits for libel or slander are prohibited under the Federal Tort Claims Act."). Therefore, the plaintiff's defamation and misrepresentation claims are dismissed for this independent basis.

---

Supp. 2d 390, 397–98 (D.D.C. 2012) ("Critical to a *Bivens* claim is an allegation 'that the defendant federal official was personally involved in the illegal conduct.'" (quoting *Simpkins v. District of Columbia*, 108 F.3d 366, 369 (D.C. Cir. 1997))). Moreover, a *Bivens* claim based upon the plaintiff's termination cannot stand because Title VII "provides the exclusive judicial remedy for claims of discrimination [on the basis of race, sex, or religion] in federal employment." *Brown v. General Services Administration*, 425 U.S. 820, 835 (1976); *see also Koch v. White*, 967 F. Supp. 2d 326, 335 (D.D.C. 2013).

Moreover, with respect to the plaintiff's DCHRA claims, "[t]he D.C. Council, not Congress, enacted the DCHRA, and there is no federal statute that evinces Congress's intent to waive the United States' immunity from suit under the DCHRA." *Marcus*, 813 F. Supp. 2d at 17. Accordingly, the plaintiff's DCHRA claim is dismissed for lack of jurisdiction. *See id.*; *see also Jordan v. Evans,* 404 F. Supp. 2d 28, 31 (D.D.C. 2005) (holding that sovereign immunity bars DCHRA claim against the Department of Commerce).

## IV.   CONCLUSION

For the reasons stated above, the District's Motion to Dismiss or in the Alternative for Summary Judgment is granted. The Federal Defendants' Motion to Dismiss Federal Defendants is also granted. An appropriate Order accompanies this Memorandum Opinion.


Date: November 25, 2014


                                        _____
                                        BERYL A. HOWELL
                                        United States District Judge